**IN THE UNITED STATES BANKRUPTCY COURT**
**Eastern District of Virginia**
**Richmond Division**

| | |
|---|---|
| In re: Mary King Alexander | Case No. 16-35652-KRH |
| Debtor | Chapter 13 |

Address:  P.O. Box 15321
          Richmond, VA 23227

Last four digits of Social Security No:     xxx-xx-4063

**NOTICE OF MOTION FOR AUTHORITY TO
MODIFY EXISTING MORTGAGE AND NOTICE OF HEARING**

The above named Debtor has filed a Motion for Authority to Modify Existing Mortgage in this bankruptcy case.

**Your rights may be affected.**  **You should read these papers carefully and discuss them with your attorney, if you have one.**

**NOTICE IS HEREBY GIVEN that a hearing thereon will be held on the above-referenced Motion at the United States Bankruptcy Court, in the Honorable Kevin R. Huennekens's Courtroom, 701 E. Broad Street, Room 5000, Richmond, VA 23219-3515, on January 31, 2018, at 12:00 p.m.**

If you do not want the Court to grant the above-referenced Motion, then no later than within 21 days of the date of this notice the date of the hearing, you or your attorney must:

File with the Court a written answer explaining your position at:

>   Clerk of Court
>   United States Bankruptcy Court
>   701 E. Broad Street,  Suite 4000
>   Richmond, VA 23219-3515

If you mail your response to the Court for filing, you must mail it to the address listed immediately above and early enough so that the Court will **receive** it within the time period stated above.

You must also send a copy to:

>   Boleman Law Firm, P.C.
>   P.O. Box 11588
>   Richmond, VA 23230-1588

Stephen F. Relyea (VSB#77236)
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588
Telephone (804) 358-9900
Counsel for Debtor

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

Pursuant to Local Bankruptcy Rule 6004-4, notice is hereby given that the terms of the proposed loan modification are as follows:

A. The principal amount of the original loan was $65,475.00, and the principal amount of the loan immediately after modification is $67,822.58;
B. The interest rate applicable to the loan before modification is 3.750% and the interest rate applicable to the loan immediately after modification is 4.125%;
C. The term of the loan before modification is 360 months, and the term of the loan immediately after modification is 480 months;
D. The monthly mortgage payment on the loan before modification, without including payment for any items other than principal and interest, is $303.23;
E. The monthly mortgage payment on the loan immediately after modification, without including payment for any items other than principal and interest, is $288.75;
F. The modified loan does not include future payment changes or balloon payments.
G. The modification will result in a lower monthly payment. However, Debtor does not anticipate increasing her bankruptcy plan payment due to changes in income and expenses.

Dated: December 28, 2017           BOLEMAN LAW FIRM, P.C.
                                   Counsel for Debtor

                          By:      /s/ Stephen F. Relyea
                                   Stephen F. Relyea (VSB#77236)
                                   Boleman Law Firm, P.C.
                                   P.O. Box 11588
                                   Richmond, VA  23230-1588
                                   Telephone (804) 358-9900
                                   Counsel for Debtor

# **CERTIFICATE OF SERVICE**

      Pursuant to Local Bankruptcy Rule 6004-4, I hereby certify that on <u>December 28, 2017</u>, I have transmitted a true copy of the foregoing document electronically through the Court's CM/ECF system or by mail to Debtor, the Chapter 13 trustee, and to all creditors or parties in interest who have requested all notices in the case at the addresses listed below (if applicable).

                                            <u>/s/ Stephen F. Relyea</u>
                                               Counsel for Debtor

Seterus, Inc. as the authorized subservicer for
Federal National Mortgage Association
P.O. Box 1047
Hartford, CT  06143

Carl A. Eason, Esquire
Wolcott Rivers Gates
200 Bendix Road, Suite 300
Virginia Beach, VA 23452

eCAST Settlement Corporation
P.O. Box 29262
New York, NY  10087-9262

Sameera Navidi, Esq.
Orlans PC
P.O. Box 2548
Leesburg, VA 20177

Jon Michael Ahern, Esq.
Sykes, Bourdon, Ahern & Levy, P.C.
281 Independence Blvd. 5th Floor
Virginia Beach, VA 23462

PRA Receivables Management LLC
POB 41067
Norfolk, VA 23541

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

In re: Mary King Alexander            Case No. 16-35652-KRH
     Debtor                                            Chapter 13

## MOTION FOR AUTHORITY TO MODIFY EXISTING MORTGAGE

COMES NOW, Mary King Alexander (the "Debtor"), by counsel, and files this Motion for Authority to Modify Existing Mortgage pursuant to 11 U.S.C. §§ 364, Federal Rules of Bankruptcy Procedure 4001(c), and Local Bankruptcy Rule 6004-4, and affirmatively states as follows:

### Jurisdiction

1. Jurisdiction of this Court over the instant matter is based upon 28 U.S.C. §§1334 and 157 in that this action arises in and relates to Debtor's bankruptcy case.

2. This proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(A), (B), (K), and (O).

3. Venue is proper pursuant to 28 U.S.C. §1409.

### Facts of this Case

4. On November 17, 2016 (hereinafter the "Petition Date"), Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.

5. The Chapter 13 plan (the "Plan") has been confirmed by the Court.

6. The Plan requires payments to the Chapter 13 trustee as follows: $980.00 for 4 months, then $1,090.00 for the following 56 months. Total plan funding is $64,960.00.

Stephen F. Relyea (VSB# 77236)
Boleman Law Firm, P.C.
P. O. Box 11588
Richmond, VA 23230-1588
Telephone (804) 358-9900
Counsel for Debtor

7. The Debtor currently has a mortgage with Seterus, Inc. as the authorized subservicer for Federal National Mortgage Association.

## Discussion

8. Debtor seeks to modify the existing loan with Seterus, Inc. as the authorized subservicer for Federal National Mortgage Association, which loan is secured by real property commonly known as 2648 Craig Mill Road, South Hill, VA 23970, and which is more particularly described as follows:

> ALL THAT PARCEL OF LAND IN CITY OF SOUTH HILL, LUNENBURG COUNTY, COMMONWEALTH OF VIRGINIA, AS DESCRIBED IN DEED BOOK 329, PAGE 350, ID# 079-0-A0-35, BEING KNOWN AND DESIGNATED AS:
>
> ALL THAT CERTAIN TRACT OR PARCEL OF LAND, LYING AND BEING IN LOCHLEVEN MAGISTERIAL DISTRICT, LUNENBURG COUNTY, VIRGINIA, CONTAINING ONE ACRE AND BOUNDED AS FOLLOWS: BEGINNING AT AN IRON PIN ON THE EASTERN EDGE OF THE RIGHT-OF-WAY OF VIRGINIA SECONDARY HIGHWAY NO. 637, SAID PIN LOCATED THIRTY FEET NORTH OF THE INTERSECTION OF THE NORTHERN BOUNDARY LINE OF THE LANDS OF WILLIAM TAYLOR WITH SAID HIGHWAY; THENCE IN A NORTHERLY DIRECTION ALONG SAID HIGHWAY A DISTANCE OF 124.5 FEET TO AN IRON PIN; THENCE ALONG A NEW LINE IN AN EASTERLY DIRECTION AT RIGHT ANGLES TO SAID HIGHWAY A DISTANCE OF 350 FEET TO AN IRON PIN AT A NEW CORNER; THENCE IN A SOUTHERLY DIRECTION ALONG A LINE PARALLEL WITH SAID HIGHWAY NO. 637 A DISTANCE OF 124.5 FEET TO AN IRON PIN ON THE EDGE OF AN OLD ROAD; THENCE IN A WESTERLY DIRECTION ALONG THE NORTHERN EDGE OF SAID OLD ROAD A DISTANCE OF 350 FEET TO AN IRON PIN ON SAID HIGHWAY NO. 637, THE POINT OF BEGINNING. SAID PROPERTY IS BOUNDED, NOW OR FORMERLY, ON THE EAST BY THE LANDS OF W. R. WALKER AND LEROY C. WILKES, ON THE NORTH BY PECOLA BASKERVILLE, ON THE SOUTH BY AN OLD ROAD, AND ON THE WEST BY HIGHWAY NO. 637.
>
> Tax/Parcel ID: 079-0-A0-35

9. Seterus, Inc. as the authorized subservicer for Federal National Mortgage Association has tendered a document to Debtor detailing the terms of proposed loan modification. Such document is attached to this motion as an Exhibit and incorporated herein by this reference.

10. The terms of the proposed modification are as follows:

    A. The principal amount of the original loan was $65,475.00, and the principal amount of the loan immediately after modification is

$67,822.58;

B. The interest rate applicable to the loan before modification is 3.750% and the interest rate applicable to the loan immediately after modification is 4.125%;

C. The term of the loan before modification is 360 months, and the term of the loan immediately after modification is 480 months;

D. The monthly mortgage payment on the loan before modification, without including payment for any items other than principal and interest, is $303.23;

E. The monthly mortgage payment on the loan immediately after modification, without including payment for any items other than principal and interest, is $288.75;

F. The modified loan does not include future payment changes or balloon payments;

G. The modification will result in a lower monthly payment. However, Debtor does not anticipate increasing her bankruptcy plan payment due to changes in income and expenses;

H. Any and all mortgage arrearages, including pre-petition and post-petition arrearages, if any, are re-amortized, and Trustee will be relieved from making payments on the arrears claim; and

11. The proposed loan modification is beneficial to Debtor because it will capitalize all arrears and provide for a more manageable monthly mortgage payment.

WHEREFORE, for the foregoing reasons, the Debtor respectfully requests this Honorable Court to enter an Order (1) permitting Debtor to modify the current loan with Seterus, Inc. as the authorized subservicer for Federal National Mortgage Association as set forth herein, and (2) for such other and further relief as the Court deems proper.

Respectfully submitted,

MARY KING ALEXANDER

By Counsel:

/s/ Stephen F. Relyea
Stephen F. Relyea (VSB # 77236)
Boleman Law Firm, P.C.
P. O. Box 11588
Richmond, Virginia 23230-1588
Telephone (804) 358-9900
Counsel for Debtor

## **CERTIFICATE OF SERVICE**

Pursuant to Local Bankruptcy Rule 6004-4, I hereby certify that on December 28, 2017, I have transmitted a true copy of the foregoing document electronically through the Court's CM/ECF system or by mail to Debtor, the Chapter 13 trustee, and to all creditors or parties in interest who have requested all notices in the case at the addresses listed below (if applicable).

                                          /s/ Stephen F. Relyea
                                          Counsel for Debtor

Seterus, Inc. as the authorized subservicer for
Federal National Mortgage Association
P.O. Box 1047
Hartford, CT  06143

Carl A. Eason, Esquire
Wolcott Rivers Gates
200 Bendix Road, Suite 300
Virginia Beach, VA 23452

eCAST Settlement Corporation
P.O. Box 29262
New York, NY  10087-9262

Sameera Navidi, Esq.
Orlans PC
P.O. Box 2548
Leesburg, VA 20177

Jon Michael Ahern, Esq.
Sykes, Bourdon, Ahern & Levy, P.C.
281 Independence Blvd. 5th Floor
Virginia Beach, VA 23462

PRA Receivables Management LLC
POB 41067
Norfolk, VA 23541

**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

In re: Mary King Alexander                                  Case No. 16-35652-KRH
Debtor                                                                          Chapter 13

### SUMMARY OF THE PROPOSED LOAN MODIFICATION

|  | **Original Loan** | **Modified Loan** |
|---|---|---|
| Principal Amount | $65,475.00 | $67,822.58 |
| Interest Rate | 3.750% | 4.125% |
| Term or Maturity Date | 360 months | 480 months |
| Monthly Payment | $303.23 | $288.75 |

    1.    The modified loan **does not** include future payment changes or balloon payments.

    2.    The modification **does not** result in a higher monthly payment. If applicable, the source(s) of the funds used to make that payment is/are: N/A

    3.    The modification **does** result in a lower monthly payment. The amount of future plan payments **will not** be increased.

Collateral Address: 2648 CRAIG MILL RD, SOUTH HILL VA  23970-0000

Loan Number: ▮▮▮▮▮▮    Prepared by Servicer: Seterus, Inc., NMLS ID Number: 787641, Investor Loan Number: ▮▮▮▮▮▮

▮▮▮▮▮▮

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 5th day of October, 2017, between ALEXANDER, MARY K ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated January 28, 2013,  of the County Records of Lunenburg and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
    2648 CRAIG MILL RD, SOUTH HILL VA 23970-0000

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of November 01, 2017, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $67,822.58, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.125%, from October 01, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $288.75, beginning on the 1st day of November, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.125% will remain in effect until principal and interest are paid in full. If on October 01, 2057 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $100.43 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. This includes private mortgage insurance (PMI) premiums on the Loan, if applicable, and may increase as a result of the Unpaid Principal Balance, which will result in a higher total monthly payment.
   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing November 01, 2017.

(b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.

(c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.

(d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:

(a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

(b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the

Page 2 of 6

Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs, and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake, or omission), if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect, upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect, and such terms will not be modified by this Agreement.

7. Notwithstanding anything to the contrary contained in this Agreement, if Borrower obtains a discharge of the debt in bankruptcy in the future, nothing in this Agreement shall be construed as an attempt to collect against Borrower personally or an attempt to revive personal liability.

8. Borrower will pay to Lender, on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums, in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly,

pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

9. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

10. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with

obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

In Witness Whereof, the Servicer and I have executed this Agreement.

_____
Seterus, Inc.  Authorized Signer

_____
Date

*[signature: Mary K. Alexander]*
ALEXANDER, MARY K
c/o AMANDA ERIN DEBERRY, P.O. BOX 11588
RICHMOND, VA 23230-1588

11-29-17
Date

Certificate of Acknowledgement

State of ___Virginia___

County of ___Henrico___

On ___11/28/17___, before me, ___Carol King-Robinson___,
     (date)                                      (notary)

personally appeared, ___Mary K. Alexander___,
                              (signer)

personally known to me

-- OR --

proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

*[notary signature: Carol King-Robinson]*
(notary signature)

My Commission Expires: 9/30/2020

(seal)

CAROL DENISE KING-ROBINSON
NOTARY PUBLIC
Commonwealth of Virginia
Registration #229389
My Commission Expires Sept. 30, 2020

Page 6 of 6